**ROBINSON ZERMAY LLP**
Alexander K. Robinson (SBN 318125)
777 S. Alameda, Second Floor
Los Angeles, California 90021
Tel:213.257.9299
Email: ak@robinsonzermay.com
        renee@robinsonzermay.com


*Attorneys for Plaintiff Nelson Quintanilla*

# UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON QUINTANILLA,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF SAN BERNARDINO; SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT; SHERIFF OF SAN BERNARDINO COUNTY; CHRISTIAN S. VEIT; STRAIN SAYLOR; LARSON TANNER; IGNACIO ARROYO; and DOES 1-100, inclusive,<br><br>        Defendants. | CASE №:<br><br>*Unlimited Jurisdiction*<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES:**<br><br>**1. Fourth Amendment (42 U.S.C. § 1983) – Excessive Force**<br><br>**2. Fourth Amendment (42 U.S.C. § 1983) – Unlawful Arrest**<br><br>**3. First Amendment (42 U.S.C. § 1983) – Retaliation**<br><br>**4. Municipal Liability (42 U.S.C. § 1983) – Monell**<br><br>**5. Bane Act (Cal. Civ. Code § 52.1)**<br><br>**6. Battery by a Peace Officer**<br><br>**7. False Imprisonment**<br><br>**8. Conversion**<br><br><br>*JURY TRIAL DEMANDED* |

VERIFIED COMPLAINT

Plaintiff Nelson Quintanilla ("Mr. Quintanilla"), by and through his counsel, hereby files this Complaint for Damages, Declaratory, and Injunctive Relief against Defendants COUNTY OF SAN BERNARDINO; SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT; SHERIFF OF SAN BERNARDINO COUNTY; CHRISTIAN S. VEIT; STRAIN SAYLOR; LARSON TANNER; IGNACIO ARROYO; and DOES 1 through 100, inclusive. This action is brought in the United States District Court pursuant to 42 U.S.C. § 1983 to redress the violation of Mr. Quintanilla's fundamental rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution. Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear related claims arising under Article I of the California Constitution, California Civil Code Section 52.1 (the Bane Act), and the common laws of the State of California.

**INTRODUCTION AND SUMMARY OF CLAIMS**

1. "Why are you handcuffing me for?" Plaintiff Nelson Quintanilla asked at timestamps 2:12 – 2:17 in Exhibit A immediately after he was violently tackled to the ground, his face pressed into the casino floor, and Defendant Strain Saylor's knee was applied to the back of his neck. On November 3 and 4, 2024, Mr. Quintanilla was a lawful patron at the Yaamava' Resort & Casino, where he had won approximately $2,000. As he attempted to comply with a request to exit, Defendant Christian S. Veit—without verbal warning or stated legal cause—seized him from behind at timestamp 0:17 in Exhibit A, initiating a brutal use of force and applying life-threatening pressure to his neck in violation of the Fourth and Fourteenth Amendments and Article I, Section 13 of the California Constitution.

2. Mr. Quintanilla was at all times unarmed and non-confrontational as he moved toward the exit. Casino staff explicitly stated on video at timestamps 6:28 – 7:00 in Exhibit C that they "didn't want to press charges". Despite his voluntary departure, Defendants Veit, Saylor, and Tanner directed their attention toward him, resulting in an Unlawful Seizure and False Imprisonment without legal privilege.

3. As Mr. Quintanilla walked through the exit corridor, Defendant Veit grabbed his sweater from behind without prior communication. This contact constituted a Battery by a Peace Officer, resulting in a diagnosed left elbow sprain and low back pain, requiring immediate emergency room medical attention as documented in Exhibit F.

4. The use of knee-to-neck restraints—captured at timestamp 0:46 in Exhibit B—represents Excessive Force and violates California Government Code § 7286.5. Under the binding authority of *Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003), kneeling on the neck of a compliant, prone individual is a clear constitutional violation

5. The involved deputies initiated a violent assault to manufacture a false narrative of resistance. This constitutes First Amendment Retaliation, evidenced by Defendant Larson Tanner's baseless accusation at timestamps 12:28 – 12:44 in Exhibit D that Mr. Quintanilla "assaulted a cop," a claim flatly contradicted by visual evidence.

6. Following the assault, Defendants engaged in the Conversion of Mr. Quintanilla's property by failing to return approximately $830 of his recorded casino funds. Furthermore, while in custody, deputies utilized "threat, intimidation, or coercion" to pressure him into signing documents, a flagrant violation of the Bane Act (California Civil Code § 52.1).

7. This misconduct was ratified by Defendant Sergeant Ignacio Arroyo, who approved the falsified report (Exhibit E) despite contradictory video evidence. The San Bernardino County Sheriff's Department must be held accountable for its persistent and egregious assaults on individuals lawfully exercising their rights.

## THE PARTIES

8. Plaintiff Nelson Quintanilla is a 38-year-old male residing in Loma Linda, California. On November 3 and 4, 2024, Mr. Quintanilla was a lawful patron at the Yaamava' Resort & Casino when he was subjected to the unprovoked use of excessive and unreasonable force, including a prohibited prone neck restraint, by deputies of the San Bernardino County Sheriff's Department. As a direct result of this encounter, Mr. Quintanilla suffered significant physical trauma, including a diagnosed elbow sprain and low back pain, as well as severe emotional injury.

9. Defendant County of San Bernardino is a municipal corporation and a political subdivision of the State of California. The County is sued in its own right for federal constitutional violations pursuant to Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658 (1978), based on its policies, customs, and

practices—including a failure to adequately train deputies on the dangers of positional asphyxia—which were the "moving force" behind the violation of Plaintiff's rights.

10.     Defendant San Bernardino County Sheriff's Department is a local government agency of Defendant County of San Bernardino. At all relevant times, the Sheriff's Department was responsible for the training, supervision, and conduct of its deputies. Under California law, all actions of the Sheriff's Department and its employees are the legal responsibility of the County of San Bernardino under the doctrine of *respondeat superior*.

11.     Defendant Sheriff of San Bernardino County is, and was at all times relevant, the final policymaker for the Sheriff's Department. He is responsible for the implementation of de-escalation protocols and use-of-force training. He is sued in both his individual and official capacities for his role in ratifying the unconstitutional conduct of his subordinates.

12.     Defendant Christian S. Veit (ID F5566), Defendant Strain Saylor (ID H8273), Defendant Larson Tanner (ID I1580), and Defendant Ignacio Arroyo (ID I3307) were, at all relevant times, deputies or supervisors for the San Bernardino County Sheriff's Department acting under color of law. Each individual Defendant is sued in both their individual and official capacities.

### JURISDICTION AND VENUE

13.     This action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983. This Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

14.     This Court has supplemental jurisdiction over Plaintiff's state law claims—including violations of the Bane Act (Cal. Civ. Code § 52.1) and California common law—pursuant to 28 U.S.C. § 1367, because these claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

15.     Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) because the County of San Bernardino is located within this District and a substantial part of the events or omissions giving rise to the claims occurred at the Yaamava' Resort & Casino in San Bernardino County.

VERIFIED COMPLAINT

16.     Plaintiff has complied with the mandatory administrative requirements of the California Government Claims Act (Gov. Code § 810, et seq.). On April 28, 2025, Plaintiff timely filed a formal Claim Against the County of San Bernardino detailing the use of excessive force and illegal neck restraints on November 3, 2024. The County rejected this claim, or it was deemed rejected by operation of law, satisfying all conditions precedent for filing this action.

## FACTUAL ALLEGATIONS

### A. The Unlawful Seizure and Excessive Use of Force

17.     On the evening of November 3, 2024, at approximately 23:01:28, San Bernardino County Sheriff's deputies were dispatched to the Yaamava' Resort & Casino. At timestamp 0:17 in **Exhibit A**, Defendant Deputy Veit—acting under color of law—physically seized Plaintiff Nelson Quintanilla by grabbing his sweater from behind without providing any verbal warning or command. This sudden physical contact was initiated while Mr. Quintanilla was peacefully and lawfully attempting to exit the premises.

18.     Within seconds of the initial grab, multiple deputies initiated a violent tackle, forcibly throwing Mr. Quintanilla to the ground. As documented in **Exhibit B** at timestamp 0:46, the situation escalated into a life-threatening scenario as one deputy sat directly on Mr. Quintanilla's head while another placed a knee on the back of his neck, pressing his face into the casino floor. This use of prone restraint occurred despite Mr. Quintanilla offering no active resistance at the time of the tackle.

19.     During the initial stages of this violent seizure, specifically at timestamps 2:12 – 2:17 in **Exhibit A**, Mr. Quintanilla exercised his First Amendment right to inquire about the legal justification for the assault, asking: "Why are you handcuffing me for?". His inquiry was met with further physical force and a total lack of verbal explanation from the deputies.

### B. Pretextual "Subject Check" and Manufacture of a False Narrative

20.     Despite the extreme force applied, casino security personnel confirmed on recording in **Exhibit C** (between timestamps 6:28 – 7:00) that they "didn't want to press charges". Security personnel specifically characterized the encounter as a routine "subject check" rather than a criminal investigation, proving there was no underlying crime reported at the time of the police intervention.

VERIFIED COMPLAINT

21. To retroactively justify the brutality, the reporting deputy authored a Police Event Report (**Exhibit E**) claiming Mr. Quintanilla exhibited "overwhelming resistance" and had "uncoordinated" movement. This claim is flatly contradicted by video evidence at timestamp 0:17 in **Exhibit A**, which shows the involved deputy initiating aggressive physical contact from behind on a subject who was simply walking away.

22. Further establishing this deceptive narrative, a deputy is recorded on **Exhibit D** (between timestamps 12:28 – 12:44) making the baseless and false verbal accusation that Mr. Quintanilla "assaulted the cop". Defendant Sergeant Ignacio Arroyo, the on-scene supervisor, ratified this unconstitutional conduct by allowing the report to be filed with the false narrative of "overwhelming resistance" despite his authority to review the use of force.

**C. Custodial Coercion and Constitutional Violations**

23. While held in detention during the early morning hours of November 4, 2024, the involved deputies utilized coercion to pressure Mr. Quintanilla into signing documents for his release. At timestamp 17:40 in **Exhibit D**, deputies informed Mr. Quintanilla that he could only leave if he signed a document, attempting to secure a signature under extreme duress and the threat of continued incarceration.

24. Despite the physical and custodial pressure, Mr. Quintanilla maintained his innocence and steadfastly "REFUSED TO SIGN CITE" at timestamp 23:53:25, as officially documented in the Police Event Report (**Exhibit E**). This refusal underscores that the Plaintiff did not consent to the manufactured charges.

25. Although the physical force began on the night of November 3, 2024, Mr. Quintanilla was not read his Miranda rights until he was already inside the detention jail on the morning of November 4, 2024 (timestamp 22:20 in **Exhibit D**). This delay constituted a significant violation of his procedural due process rights during a custodial environment.

**D. Medical Injuries, Favorable Termination, and Conversion of Property**

26. As a direct result of the force used, Mr. Quintanilla was diagnosed with an **ELBOW SPRAIN** and **LOW BACK PAIN**. These injuries required emergency medical intervention on November 4, 2024, including an **X-RAY ELBOW** and **X-RAY LUMBOSACRAL SPINE**, as documented in **Exhibit F** and **Exhibit G**.

VERIFIED COMPLAINT

27. On December 8, 2025, the court ordered a dismissal in the "interest of justice" (PC 1385) for the misdemeanor charge of PC 148(a)(1). This dismissal, documented in **Exhibit H**, constitutes a favorable termination of the criminal proceedings and confirms the lack of evidence supporting the deputies' claims of resistance.

28. Plaintiff timely exhausted his administrative remedies by filing his formal claim on April 28, 2025 (**Exhibit I**). The claim addresses the conversion of a specific, identifiable fund—namely, Plaintiff's recorded casino winnings and personal cash—which Defendants had a legal duty to return upon his release.

29. Plaintiff initially entered the casino with a $1,000 bankroll and subsequently won $2,000 at the baccarat table, which he immediately cashed out and reserved. He later cashed out an additional $500 in black chips and between $500 and $800 in green chips from a blackjack session.

30. At the time of the unlawful seizure, Plaintiff was in possession of **at least $3,000** in total currency. However, the Police Event Report (**Exhibit E**) documents that only **$2,170** was returned to him, resulting in a specific, identifiable discrepancy of **at least $830**.

31. This discrepancy is highlighted in **Exhibit D** (between timestamps 5:50 – 6:05), where Plaintiff is recorded asking deputies: "Will my money be counted? Can you count my money right now sir?". Despite repeated requests, the funds were not counted in his presence, nor was a line-item property receipt provided at the time of seizure.

32. To definitively establish the value of this fund, Plaintiff has requested his official **Form W2-G** from Yaamava' Resort & Casino and reserves the right to incorporate this as conclusive evidence of the converted amount.

### COUNT I
### UNREASONABLE SEARCH AND SEIZURE – EXCESSIVE FORCE
### (42 U.S.C. § 1983; Fourth Amendment)

33. Plaintiff Nelson Quintanilla re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

34. The **Fourth Amendment of the United States Constitution** protects the right of the people to be secure in their persons against "objectively unreasonable" force, a standard that requires a careful balancing of the nature of the intrusion against the governmental interests at stake as established in *Graham v. Connor*, 490 U.S. 386.

35. Defendants violated this constitutional mandate when Deputy Veit (ID: F5566) initiated a physical seizure by grabbing Plaintiff from behind without any prior verbal warning, command to stop, or opportunity for voluntary compliance, as captured at **timestamp 0:17 in Exhibit A**.

36. This sudden "takedown" was initiated against a non-threatening subject who was peacefully walking toward an exit, violating the standards in *Young v. County of Los Angeles*, 655 F.3d 1156, which holds that intermediate force is unreasonable when the subject is not an immediate threat and has not been given a warning.

37. The level of force unnecessarily and dangerously escalated into a life-threatening scenario when multiple deputies tackled Plaintiff to the floor, as documented at **timestamp 0:46 in Exhibit B**.

38. While Plaintiff was prone and defenseless, a deputy sat directly on his head while another applied a knee-to-neck restraint, a maneuver known to cause positional asphyxia and serious bodily injury.

39. Under the binding authority of *Drummond v. City of Anaheim*, 343 F.3d 1052, the Ninth Circuit held that kneeling on the neck of a compliant, prone, and subdued individual is a per se violation of the Fourth Amendment.

40. Furthermore, this conduct violated the standards set by **California Assembly Bill 1196** (codified in Gov. Code § 7286.5), which prohibits law enforcement from using carotid restraints or any maneuver that involves applying pressure to a person's neck.

41. Plaintiff's non-violent state is further evidenced by his verbal inquiry immediately following the application of handcuffs; at **timestamps 2:12 – 2:17 in Exhibit A**, Plaintiff asked: "Why are you handcuffing me for?".

42. The excessive force directly resulted in documented physical trauma, including a diagnosed elbow sprain and low back pain necessitating emergency medical care as seen in **Exhibit F** and **Exhibit G**.

43. Plaintiff has no adequate remedy at law and will continue to suffer irreparable harm to his constitutional rights unless Defendants are enjoined from utilizing lethal prone neck restraints on non-resisting subjects.

**COUNT II**
**UNREASONABLE SEARCH AND SEIZURE – UNLAWFUL DETENTION/ARREST**
**(42 U.S.C. § 1983; Fourth Amendment)**

44. Plaintiff Nelson Quintanilla re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this complaint as though fully set forth herein.

45. This cause of action is brought pursuant to 42 U.S.C. § 1983 for the violation of rights secured by the **Fourth Amendment to the United States Constitution**, which prohibits law enforcement from subjecting citizens/permanent legal residents to unreasonable seizures of their person.

46. A warrantless arrest is a *per se* violation of the **Fourth Amendment** and **Article I, Section 13 of the California Constitution** unless law enforcement officers possess "probable cause"—defined as a "fair probability" based on the totality of the circumstances—to believe that the individual has committed or is currently committing a specific criminal offense.

47. At the time of the initial physical seizure at **timestamp 0:17 in Exhibit A** and the subsequent custodial arrest, there was no objective probable cause to believe that Plaintiff had committed any crime, as he was a lawful patron of the Yaamava' Resort & Casino peacefully and voluntarily attempting to exit the premises.

48. Following *Young v. County of Los Angeles*, 655 F.3d 1156, "subject checks" for minor infractions do not justify high-intrusion tactics like prone handcuffing unless there is a specific, articulable safety threat.

49. The total lack of underlying criminal activity is definitively confirmed by the recorded statements of casino security personnel between **timestamps 6:28 – 7:00 in Exhibit C**, wherein security staff explicitly stated they "didn't want to press charges" and characterized the law enforcement intervention as a routine "subject check" rather than a criminal investigation.

50. Under the binding Ninth Circuit ruling in *Dubner v. City & County of San Francisco*, 266 F.3d 959, an arrest is legally invalid and unconstitutional if the arresting officers lack probable cause of an underlying criminal offense at the exact moment the seizure is initiated.

51. Defendants' retroactive claim of "trespassing" under **California Penal Code § 602** was a manufactured pretext, utilized solely to justify a high-intensity custodial arrest and the use of excessive force against a Plaintiff who was already in the process of voluntary departure from the property.

VERIFIED COMPLAINT

52. Under *Velazquez v. City of Long Beach*, 793 F.3d 1010, an officer cannot detain or arrest an individual for public intoxication (**PC § 647(f)**) based solely on the smell of alcohol or an admission of drinking; the subject must be unable to care for their own safety.

53. The video evidence in **Exhibit A** shows Plaintiff walking normally and toward an exit, flatly contradicting the "uncoordinated" claim in **Exhibit E** and proving the intoxication charge was a manufactured pretext.

54. Following the established precedent in *Velazquez v. City of Long Beach*, 793 F.3d 1010 (9th Cir. 2015), an officer cannot legally create a charge of "resisting, delaying, or obstructing" under **California Penal Code § 148(a)(1)** out of an encounter that was itself unsupported by reasonable suspicion or probable cause.

55. Under *Velazquez*, criticism of police or questioning the basis of a detention is protected speech and cannot constitute resistance.

56. Specifically, Plaintiff's documented **"REFUSED TO SIGN CITE"** at **timestamp 23:53:25 in Exhibit E** was a lawful exercise of his rights under the circumstances of an unlawful detention.

57. Under the *Velazquez* standard, non-compliance with orders that lack a lawful basis—such as the pretextual "subject check" detention—cannot constitute criminal resistance.

58. As a direct and proximate result of this unlawful arrest, Plaintiff was deprived of his fundamental liberty for several hours, forced through a traumatic and invasive booking process against his will, and held in a custodial environment without legal justification.

59. The ultimate dismissal of all charges in the "interest of justice" pursuant to **California Penal Code § 1385** on December 8, 2025, as documented in **Exhibit H**, further serves as judicial confirmation that there was a total lack of probable cause to support the initial arrest or the subsequent criminal proceedings.

<u>**COUNT III**</u>
**FIRST AMENDMENT RETALIATION**
**(42 U.S.C. § 1983)**

60. Plaintiff Nelson Quintanilla re-alleges and incorporates by reference the preceding paragraphs of this complaint as though fully set forth herein.

61. This cause of action is brought pursuant to 42 U.S.C. § 1983 for the violation of rights secured by the **First Amendment to the United States Constitution**, which protects the fundamental right of

10

VERIFIED COMPLAINT

citizens/permanent legal residents to verbally question, challenge, or oppose police conduct without fear of physical retaliation, arrest, or the manufacture of false criminal charges.

62. After the initial violent tackle and upon being restrained at **timestamps 2:12 – 2:17 in Exhibit A**, Plaintiff exercised this protected right by asking the exact verbal question: "Why are you handcuffing me for?" as a means of seeking legal clarification for the deputies' sudden and violent intervention.

63. In direct response to this protected speech and Plaintiff's subsequent objections to the unlawful seizure, deputies proceeded with a full custodial arrest and the systematic manufacture of false records—including **Exhibit E** authored by the reporting deputy—rather than providing any lawful verbal explanation for their actions.

64. Under the authority of ***Duran v. City of Douglas***, 904 F.2d 1372, the Ninth Circuit ruled that police may not use their authority to punish or retaliate against individuals for verbalizing opposition to police actions, as such speech is a core component of a free society.

65. Clear evidence of retaliatory intent is found in **Exhibit D**, where a deputy is heard making the baseless and false verbal accusation that **"I [the plaintiff] assaulted the cop" between timestamps 12:28 – 12:44**, a statement designed to create a criminal pretext where none existed.

66. This false accusation was a calculated attempt by Defendants to smear Plaintiff's character, justify the excessive force used in **Exhibit B**, and punish him for his refusal to remain silent while his constitutional rights were being systematically violated.

67. Defendants' decision to charge Plaintiff with **California Penal Code § 148(a)(1)** was motivated by a malicious desire to chill Plaintiff's future exercise of his First Amendment rights and to discourage him from filing a formal complaint regarding the brutality he suffered.

68. But for Plaintiff's protected questioning of the deputies' authority and the legal basis for his detention, the encounter would likely have remained a routine and peaceful **"subject check"** as requested by casino security in **Exhibit C**.

69. Mr. Quintanilla seeks declaratory relief to affirm that his speech was fully protected under the **First Amendment** and that the deputies' retaliatory conduct constitutes a gross abuse of power and a violation of 42 U.S.C. § 1983.

11

VERIFIED COMPLAINT

**COUNT IV**
**MUNICIPAL LIABILITY – FAILURE TO TRAIN**
**(MONELL) (42 U.S.C. § 1983)**

70.     Plaintiff Nelson Quintanilla re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this complaint as though fully set forth herein.

71.     This cause of action is brought against the **County of San Bernardino** pursuant to 42 U.S.C. § 1983 and the landmark doctrine established in *Monell v. Department of Social Services*, 436 U.S. 658, which holds that a municipality or local government entity is liable for constitutional violations caused by its official policies, pervasive customs, or a failure to train that amounts to deliberate indifference.

72.     The **County of San Bernardino** failed to adequately train the involved deputies on the specific, well-documented, and lethal dangers associated with prone neck restraints and positional asphyxia, as evidenced by the reckless and standard-procedure-style application of life-threatening force against Plaintiff as documented in **Exhibit B**.

73.     The County further failed to implement or enforce necessary de-escalation policies for routine "subject checks," allowing a dangerous custom to persist where deputies are permitted to treat non-criminal, non-violent interactions as high-intensity combat scenarios requiring immediate physical escalation.

74.     This systemic failure to train and supervise constitutes **"deliberate indifference"** to the constitutional rights and physical safety of patrons at the Yaamava' Resort & Casino and the general public, particularly because the risk of serious injury or death from prone restraints is highly predictable and avoidable.

75.     Beyond a failure to train, the County is liable under *Monell* through the ratification of unconstitutional conduct by a supervisor with decision-making authority. The County's internal review and supervisory processes, overseen by supervisors including **Sergeant Ignacio Arroyo**, failed to identify, investigate, or correct the manufacture of false narratives recorded in **Exhibit E**.

76.     **Sergeant Arroyo**, acting as the on-scene supervisor and listed as the **"BACKER"** in the Police Event Report, observed the use of force and, upon information and belief, subsequently approved the falsified report authored by Defendant Tanner. Despite having the opportunity to review video evidence or witness the event, Sergeant Arroyo adopted the false narrative as official department policy for this incident, thereby ratifying the unconstitutional conduct of his subordinates. By failing to discipline the involved deputies

12

VERIFIED COMPLAINT

for such egregious conduct, the County signaled to its employees that these unconstitutional behaviors are protected department standards.

77. Furthermore, the arrest for public intoxication (**PC § 647(f)**) was a manufactured pretext; the County maintained a custom of ignoring objective evidence of sobriety in favor of high-intensity custodial arrests during routine "subject checks".

78. These systemic failures, unconstitutional customs, and inadequate training protocols were the **"moving force"** and the proximate cause behind the violation of Plaintiff Nelson Quintanilla's Fourth and Fourteenth Amendment rights on the night of November 3, 2024.

79. Plaintiff Nelson Quintanilla has suffered serious, permanent, and irreparable harm due to these municipal policies, necessitating immediate court intervention to prevent future instances of deputy brutality and the continued use of unconstitutional restraint tactics.

80. Pursuant to 42 U.S.C. § 1983, Mr. Quintanilla seeks declaratory and injunctive relief to compel the **County of San Bernardino** to reform its training curricula, specifically regarding mandatory de-escalation and the absolute prohibition of neck restraints on prone subjects.

**COUNT V**
**BANE ACT VIOLATION**
**(California Civil Code § 52.1)**

81. Plaintiff Nelson Quintanilla re-alleges and incorporates by reference each and every preceding allegation of this complaint as though fully set forth herein.

82. **California Civil Code § 52.1**, known as the **Tom Bane Civil Rights Act**, provides that if a person or persons, whether or not acting under color of law, interferes by "threat, intimidation, or coercion," or attempts to interfere by "threat, intimidation, or coercion," with the exercise or enjoyment by any individual of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the individual whose rights are interfered with may institute a civil action for damages and injunctive relief.

83. Defendants, acting under color of law, violated this statute by utilizing extreme physical coercion to interfere with Plaintiff's **Fourth Amendment** right to be free from unreasonable seizure and his **Fourteenth Amendment** right to due process.

84. This physical coercion was manifested when deputies used excessive and life-threatening force to tackle and pin Plaintiff to the floor with a knee to his neck, an act of violence exceeding any lawful authority, as captured in **Exhibit B** (MP4 Video H8273).

85. Further custodial coercion occurred during the early morning hours of November 4, 2024, at **timestamp 17:40 in Exhibit D** (MP4 Video I1580-B), where deputies utilized their position of authority to pressure Plaintiff to sign a citation in exchange for his release from jail.

86. This custodial pressure constituted an illegal attempt to force Plaintiff to validate a manufactured criminal charge under the extreme duress of continued and indefinite imprisonment.

87. Under the authoritative California precedent of *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766 (2017), an arrest made without probable cause—as is the case here—inherently satisfies the "coercion" element required to prove a violation of the Bane Act.

88. Plaintiff's steadfast refusal to yield to this systemic intimidation and coercion is documented at **timestamp 23:53:25 in Exhibit E** (Police Event Report #SM243080033), where the reporting deputy recorded that Plaintiff **"REFUSED TO SIGN CITE"**. This refusal, documented by the department's own records, serves as definitive evidence that Mr. Quintanilla did not succumb to the custodial pressure and maintained his innocence despite the duress.

89. Defendants acted with the specific intent to violate Plaintiff's rights and to insulate themselves and the County of San Bernardino from civil liability by attempting to coerce a signature on a disputed and manufactured citation.

90. The above-described coercive and intimidating conduct was a direct and proximate cause of significant emotional trauma, physical pain, and mental anguish for Plaintiff Nelson Quintanilla.

91. Pursuant to **California Civil Code § 52.1(h)**, Mr. Quintanilla seeks compensatory damages, statutory penalties, and reasonable attorney's fees for these intentional and malicious violations of his California civil rights.

### COUNT VI
### BATTERY BY A PEACE OFFICER
**(California Common Law)**

92. Plaintiff Nelson Quintanilla re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this complaint as though fully set forth herein.

VERIFIED COMPLAINT

93. Under **California Common Law**, battery is defined as the intentional, harmful, and non-consensual use of force against another person that results in offensive or injurious physical contact.

94. In the context of law enforcement, a peace officer is liable for the tort of battery if the force utilized during the course of a detention or arrest is found to be "unreasonable" or "excessive" given the totality of the circumstances known to the officer at the time.

95. The unprovoked physical grab of Plaintiff's clothing and the subsequent violent tackle initiated by Deputy Veit (ID: F5566) and other Doe defendants at **timestamp 0:17 in Exhibit A** (MP4 Video F5566) constituted an entirely unreasonable use of force for a routine "subject check" involving an unarmed individual who was walking toward an exit.

96. The intentional application of a knee to Plaintiff's neck and the act of sitting on Plaintiff's head while he was prone and non-resisting, as documented in **Exhibit B** (MP4 Video H8273), constituted harmful and offensive contact that served no legitimate law enforcement objective and was objectively dangerous to Plaintiff's life.

97. According to the standard set in *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, while the burden is on the plaintiff to prove the force used was unreasonable, Plaintiff Nelson Quintanilla has met and exceeded this burden through the presentation of objective video evidence.

98. Plaintiff has definitively established this unreasonableness via video evidence showing he was peacefully walking away and cooperative with all visible surroundings before being suddenly and violently tackled from behind without warning.

99. This battery directly resulted in significant physical trauma, specifically a diagnosed **ELBOW SPRAIN** and **LOW BACK PAIN**, which were evaluated and confirmed by medical professionals on November 4, 2024, as seen in the **After Visit Summary** marked as **Exhibit F**.

100. As a further consequence of this battery, Plaintiff suffered direct financial loss due to emergency room co-pays, costs for diagnostic **X-RAY ELBOW** and **X-RAY LUMBOSACRAL SPINE** procedures, and other medical expenses as documented in **Exhibit G**.

101. The intentional battery committed by Defendants was the direct and proximate cause of the severe personal, physical, and financial harm suffered by Plaintiff, for which he is entitled to full compensatory damages according to proof at trial.

102.     Plaintiff Nelson Quintanilla re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this complaint as though fully set forth herein.

103.     Under **California Common Law**, the tort of false imprisonment is defined as the non-consensual, intentional confinement of a person, without lawful privilege, for any appreciable period of time, however short.

104.     Pursuant to the landmark ruling in ***Sullivan v. County of Los Angeles***, 12 Cal.3d 710, a government entity is vicariously liable for the false imprisonment of an individual by its employees when those employees act within the scope of their employment without a warrant or probable cause.

105.     The unlawful confinement of Plaintiff Nelson Quintanilla began with the initial physical seizure and "takedown" initiated by **Defendant Veit** and other deputies at **timestamp 0:17 in Exhibit A** and continued uninterrupted through his transport and subsequent detention until his final release on November 4, 2024.

106.     Because the initial detention and subsequent arrest lacked the requisite probable cause or reasonable suspicion of criminal activity, the involved deputies lacked any **"lawful privilege"** or legal justification to restrain Plaintiff's movement or justify his continued detention.

107.     The total absence of a legal basis for this confinement is further evidenced by the recorded statements of casino security in **Exhibit C**, which prove there was no complaining witness seeking charges, thereby rendering the imprisonment an arbitrary and capricious product of deputy discretion.

108.     Plaintiff was subjected to a coercive custodial environment, including being processed, fingerprinted, and held in a jail cell, all of which occurred without a valid warrant or any underlying criminal conduct to support the deprivation of his liberty.

109.     This intentional and unlawful confinement was the direct and proximate cause of severe emotional distress, mental anguish, and a profound loss of personal liberty for the Plaintiff.

110.     Plaintiff Nelson Quintanilla respectfully seeks declaratory relief from this Court to formally affirm that his confinement by the Defendants was illegal, unconstitutional, and a violation of established California Common Law.

<u>**COUNT VIII**</u>
**CONVERSION (MISSING CURRENCY)**
**(California Common Law)**

111.     Plaintiff Nelson Quintanilla re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this complaint as though fully set forth herein.

112.     Under **California Common Law**, the tort of conversion is defined as the wrongful exercise of dominion or control over another's personal property in denial of, or inconsistent with, the owner's rights therein.

113.     The act of keeping or failing to return property that rightfully belongs to a citizen or permanent legal resident, after the legal justification for its possession has ceased, constitutes a clear act of conversion.

114.     Defendants, acting in their official capacities, seized Plaintiff's personal currency and recorded casino winnings during the course of his unlawful physical seizure and subsequent arrest on the night of November 3, 2024.

115.     At the time of the initial tackle, Plaintiff was in possession of **at least $3,000** in total currency, comprising a **$2,000 reserved baccarat win** and his active table bankroll.

116.     Approximately **$830 in a specific, identifiable sum**, representing the discrepancy between Plaintiff's documented winnings and the amount eventually processed for return, was never returned to him following his release from custody.

117.     These specific funds were in the exclusive, uninterrupted control and "dominion" of the **San Bernardino County Sheriff's Department** and the involved deputies from the moment of seizure until Plaintiff's release, as documented in his formal claim, **Exhibit I**.

118.     Pursuant to the standard set in *Lee v. Hanley*, 61 Cal. 4th 1225, Defendants wrongfully exercised dominion over these funds while they were under the exclusive, uninterrupted control of the San Bernardino County Sheriff's Department. As held in *Lee*, conversion lies where a specific sum is identifiable; here, the **$830** represents a specific set of winnings (chips/cash) that Defendants took into custody and failed to return, distinguishing this from a general debt.

119.     This discrepancy is further highlighted in **Exhibit D** (MP4 Video I1580-B) between **timestamps 5:50 – 6:05**, where Plaintiff is recorded asking deputies: **"Will my money be counted? Can you**

**count my money right now sir?"**. Despite these repeated requests, the funds were not counted in his presence, nor was a line-item property receipt provided to him at the time of seizure.

120. Despite Plaintiff's demands and the filing of administrative claims (**Exhibit I**), Defendants have willfully failed to provide a line-item accounting of the approximately **$3,000** total in cash originally in Plaintiff's possession, of which **at least $830** was never returned, resulting in a permanent deprivation of his property.

121. This failure to return seized personal property constitutes a substantial, intentional, and wrongful interference with Plaintiff's fundamental ownership rights and a permanent deprivation of his property.

122. The conversion of these funds was a direct and proximate result of the unlawful seizure and arrest of Plaintiff, which placed his private property under the total control of a government entity that failed to safeguard it.

123. Under **California Common Law**, Plaintiff Nelson Quintanilla is entitled to the full return of his property, totaling **at least $830**, plus legal interest for the period of its wrongful detention and any other damages resulting from this loss

### JURY DEMAND

124. Plaintiff Nelson Quintanilla hereby demands a trial by jury on all causes of action and all issues so triable in this matter, including but not limited to the determination of liability, compensatory damages, and statutory penalties.

125. This demand is made pursuant to Article I, Section 16 of the California Constitution, which guarantees that the "trial by jury is an inviolate right and shall be secured to all," and California Code of Civil Procedure Section 631, which governs the procedures for requesting a jury trial in civil proceedings.

126. Plaintiff further asserts his right to a jury trial for all federal claims brought under 42 U.S.C. § 1983, as protected by the Seventh Amendment to the United States Constitution.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Nelson Quintanilla respectfully requests that this Court enter judgment in his favor and against Defendants COUNTY OF SAN BERNARDINO, SAN BERNARDINO COUNTY

VERIFIED COMPLAINT

SHERIFF'S DEPARTMENT, SHERIFF OF SAN BERNARDINO COUNTY, CHRISTIAN S. VEIT, STRAIN SAYLOR, LARSON TANNER, IGNACIO ARROYO, and Does 1 through 100, inclusive, for the following relief:

1. **Compensatory and General Damages**: For past and future physical pain, suffering, severe emotional distress, mental anguish, humiliation, and loss of liberty in an amount to be determined according to proof at the time of trial.

2. **Special Damages**: For all out-of-pocket expenses, including but not limited to emergency medical treatment, diagnostic imaging (X-rays), and follow-up care as documented in **Exhibit F** and **Exhibit G**.

3. **Property Restitution**: For the immediate return of converted personal property and casino winnings totaling approximately **$830**, plus legal interest from the date of the conversion on November 3, 2024, pursuant to **California Civil Code § 3336**.

4. **Statutory Damages and Penalties**: For all statutory damages and civil penalties available under the **Bane Act (California Civil Code § 52.1)** for the interference with Plaintiff's constitutional rights through threat, intimidation, and coercion.

5. **Declaratory Relief**: For a formal judicial declaration that the Defendants' actions—specifically the warrantless arrest without probable cause and the use of life-threatening prone neck restraints—violated the **First, Fourth, and Fourteenth Amendments to the U.S. Constitution** and **Article I of the California Constitution**.

6. **Injunctive Relief**: For a permanent injunction against the **County of San Bernardino** and the **Sheriff's Department** prohibiting the use of prone neck restraints on non-resisting subjects and requiring the implementation of mandatory de-escalation training to prevent future civil rights violations.

7. **Attorney's Fees and Costs**: For reasonable attorney's fees pursuant to 42 U.S.C. § 1988, **California Civil Code § 52.1(h)**, and **California Code of Civil Procedure § 1021.5** (Private Attorney General Doctrine), together with all costs of suit incurred herein.

VERIFIED COMPLAINT

8. **Punitive Damages**: For exemplary damages against the **individual Deputy Defendants** in their individual capacities to punish their malicious and oppressive conduct and to deter such behavior in the future.

9. **Further Relief**: For such other and further relief as the Court may deem just, equitable, and proper.

DATED: February 13, 2026

**ROBINSON ZERMAY LLP**

By:

_____

Alexander K. Robinson, Esq.
*Attorneys for Plaintiff*

VERIFIED COMPLAINT

**VERIFICATION**

I, **NELSON QUINTANILLA** , declare:

1. I am the Plaintiff in the above-entitled action.

2. I have read the foregoing Verified Complaint and know its contents. The facts stated therein are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

3. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 13th day of February, 2026, at San Bernardino, California.

By:

*Nelson Quintanilla*
_____
Nelson Quintanilla

## EXHIBIT A
### MP4 VIDEO RECORDING – DEPUTY VEIT (ID F5566)

This exhibit contains a true and correct copy of the body-worn camera footage from Defendant Veit.

It confirms:

- **Exhibit A**: Video evidence at timestamp 0:17 showing Deputy Veit initiating a physical seizure by grabbing Plaintiff from behind without warning.
- **Footage at timestamps 2:12 – 2:17**: where Plaintiff verbally questions the legal basis for the detention.
- **Visual evidence**: of Plaintiff walking normally toward an exit, contradicting intoxication claims.

Offered as supporting documentation for Paragraphs 1, 12, 22, 24, 26, 37, 43, 49, 55, 64, 85, 97, and 107 of the Complaint.

VERIFIED COMPLAINT

**EXHIBIT B**
**MP4 VIDEO RECORDING – DEPUTY SAYLOR (ID H8273)**

This exhibit contains a true and correct copy of the body-worn camera footage from Defendant Saylor.

It confirms

- **Exhibit B**: Video evidence at timestamp 0:46 documenting multiple deputies tackling Plaintiff and applying a prohibited knee-to-neck restraint while he was prone and non-resisting.

Offered as supporting documentation for Paragraphs 4, 13, 23, 39, 41, 68, 77, 86, and 98 of the Complaint.

23
VERIFIED COMPLAINT

**EXHIBIT C**
**MP4 VIDEO RECORDING – CASINO SECURITY INTERACTION (ID I1580)**

This exhibit contains a true and correct copy of the recording of casino security personnel. It confirms

- **Exhibit C**: Recorded statements between timestamps 6:28 – 7:00 where security explicitly states they "didn't want to press charges" and characterized the event as a routine "subject check".

Offered as supporting documentation for Paragraphs 2, 25, 51, 70, 81, and 109 of the Complaint.

VERIFIED COMPLAINT

## EXHIBIT D
## MP4 VIDEO RECORDING – CUSTODIAL INTERACTION (ID I1580-B)

This exhibit contains a true and correct copy of the custodial and transport footage.

It confirms:

- **Exhibit D**: Verbal accusations at timestamps 12:28 – 12:44 alleging an assault on a peace officer.
- **Documentation at timestamp 17:40**: regarding custodial pressure to sign release documents.
- **Documentation at timestamps 5:50 – 6:05**: of Plaintiff's repeated requests to have his currency counted in his presence.
- **Documentation at timestamp 22:20**: of the delayed reading of Miranda rights.

Offered as supporting documentation for Paragraphs 5, 27, 28, 30, 35, 67, 87, and 124 of the Complaint.

VERIFIED COMPLAINT

This exhibit contains a true and correct copy of the official police report authored by Defendant Tanner.

It confirms:

- **Exhibit E**: The manufactured narrative of "overwhelming resistance" and "uncoordinated" movement.
- **Documentation of Sergeant Arroyo as the "BACKER" (ID I3307)**: and the reporting deputy's record of Plaintiff's "REFUSED TO SIGN CITE" at timestamp 23:53:25.
- **The recording**: of only $2,170 returned to Plaintiff.

Offered as supporting documentation for Paragraphs 6, 14, 26, 27, 29, 34, 55, 58, 65, 77, 81, 90, and 125 of the Complaint.

Detailed History for Police Event #SM243080033 As of 12/09/2024 11:25:41

Output for: B7574

Priority:3 Type:148 - RESIST OFFCR RPT
Location:SAN MANUEL CASINO, SBO at 777 SAN MANUEL BLVD S, SBO
LocCross:btwn CASINO PERIMETER ACRD and CASINO PERIMETER ACRD
LocInfo:STRCUTURES

| Created: | 11/03/2024 23:01:28 | MSMP07 | I1580 |
|---|---|---|---|
| Entered: | 11/03/2024 23:01:28 | MSMP07 | I1580 |
| Dispatch: | 11/03/2024 23:01:28 | MSMP07 | I1580 |
| Enroute: | 11/03/2024 23:01:28 | MSMP07 | I1580 |
| Onscene: | 11/03/2024 23:01:28 | MSMP07 | I1580 |
| Transprt: | 11/03/2024 23:12:53 | MSMP07 | I1580 |
| Complete: | 11/03/2024 23:23:52 | MSMP07 | I1580 |
| Closed: | 11/04/2024 00:51:00 | MSMP07 | I1580 |

ICUnit: PrimeUnit:77P11 Dispo:ARR Type:148 - RESIST OFFCR RPT
Jur:SM Group:SM Squad Area: RptDist:SB200
Case #:SMR2400724      ☑ Detail

---

```
23:01:28pst  *CREATE  I1580/MSMP07  Location:STRUCTURES Type:INC TypeDesc:MISC INCIDENT Priority:4
                                     Response:1PAT LocType:0
23:01:28     *ENTRY                  Group:None-->SM Jur:None-->SM
23:01:28     *DISPOS                 77P11 Location:STRUCTURES Operator:I1580 OperNames:TANNER,LARSON
23:01:28     -PRIU                   77P11
23:01:28     -NPREMS                 Text:(none)
23:01:40     *BACKOS  F5566/MSMP05   77R31 CalSgn:77P11 Location:STRUCTURES Operator:F5566
                                     OperNames:VEIT,CHRISTIAN,SB
23:01:45     *BACKER  I3307/MSMP06   77P12 CalSgn:77P11 Location:STRUCTURES Operator:I3307
                                     OperNames:ARROYO,IGNACIO
23:01:47     *BACKER  H8273/MSMP03   77R32 CalSgn:77P11 Location:STRUCTURES Operator:H8273
                                     OperNames:SAYLOR,STRAIN
23:02:28     *CLOS    I1580/MSMP07   77P11 Location:BRIDGE ENTRANCE
23:03:18     *ONSCN   H8273/MSMP03   77R32
23:04:36     *ONSCN   I3307/MSMP06   77P12
23:06:19     *CHANGE  I1580/MSMP07   77P11 Type:INC-->148 Priority:4-->3 CAS:0145 TypeDesc:MISC
                                     INCIDENT-->RESIST OFFCR RPT
23:06:19     *CASE                   77P11 Case#:SMR2400724
23:11:47     *RFT                    77P11 Text:INQUIRY SNS,08/06/1986,QUINTANILLA,C,NELSON,,
                                     M,,,,X,X,X,,X,,,,,,,,
23:12:53     *TRANSP                 77P11 Location:CDC
23:17:42     *CLEAR   F5566/MSMP05   77R31
23:17:46     *CLEAR   I3307/MSMP06   77P12
23:23:52     *CMPLT   I1580/MSMP07   77P11
23:33:30     *CLEAR   H8273/MSMP03   77R32
```

| | | | | |
|---|---|---|---|---|
| 23:53:25 | *MISC | I1580/MSMP07 | 77P11 Text:REFUSED TO SIGN CITE |
| 23:58:50 | *RFT | | 77P11 Text:INQUIRY SNS,08/06/1986,QUINTANILLA,C,NELSON,, M,,,,X,X,X,,X,,,,,,,, |

[11/04/2024]

00:51:00   *CLEAR          77P11 Dispo:ARR Text:ON NOVEMBER 3, 2024, AT ABOUT 2300 HOURS, DEPUTIES RESPONDED TO THE SAN MANUEL CASINO REGARDING A SUBJECT TRESPASSING. AS I ARRIVED, I SAW MY PARTNER, DEPUTY VEIT, ATTEMPT TO DETAIN THE HISPANIC MALE SUBJECT, IDENTIFIED AS NELSON QUINTANILLA. I NOTICED QUINTANILLA'S WALK WAS UNCOORDINTATED AND HE HAD RED, BLOODSHOT, WATERY EYES. VEIT PLACED HIS HAND OUT, TO STOP QUINTANILLA FROM WALKING AWAY FROM HIM. QUINTANILLA SLAPPED VEIT'S HAND OUT OF THE WAY. THREE DEPUTIES ATTEMPTED TO HANDCUFF QUINTANILLA AND HE USED HIS STRENGTH TO PREVENT US FROM HANDCUFFING HIM. QUINTANILLA ATTEMPTED TO FLEE AS DEPUTIES HELD HIS ARMS. DEPUTIES WERE FORCED TO TAKE QUINTANILLA TO THE GROUND TO OVERCOME HIS OVERWHELMING RESISTANCE. DEPUTIES GAVE MULTIPLE COMMANDS FOR QUINTANILLA TO STOP RESISTING. QUINTANILLA DID NOT OBEY OUR COMMANDS. I SMELLED THE ODOR OF AN ALCOHOLIC BEVERAGE ON QUINTANILLA. QUINTANILLA'S LEVEL OF INTOXICATION PREVENTED HIM FROM OBEYING BASIC COMMANDS DURING THE BOOKING PROCESS. AT THE JAIL, QUINTANILLA ADMITTED TO DRINKING WINE. QUINTANILLA REFUSED TO SIGN HIS CITATION.

| | | | |
|---|---|---|---|
| 00:51:00 | -PRIU | | 77P11 |
| 00:51:00 | -CLEAR | | |
| 00:51:00 | *CLOSE | | |
| 00:59:41 | CHANGE | I5973/EC03 | Location:STRUCTURES-->SAN MANUEL CASINO, SBO LocInfo:None-->STRCUTURES RD:None-->SB200 LocDesc:None-->at 777 SAN MANUEL BLVD S, SBO Unknown:-117.227082 Unknown:34.151125 |
| 00:59:41 | -PREMIS | | Text:PPR |
| 00:59:45 | CV | | |

**EXHIBIT F**
**MEDICAL RECORDS – AFTER VISIT SUMMARY**

This exhibit contains a true and correct copy of the Plaintiff's medical evaluation results from November 4, 2024.

It confirms

- **Exhibit F**: Clinical diagnoses of an elbow sprain and low back pain resulting from the force used during the arrest.

Offered as supporting documentation for Paragraphs 3, 31, 44, 93, 101, and 102 of the Complaint.

# AFTER VISIT SUMMARY

 **KAISER PERMANENTE.**

**Nelson E. Quintanilla**  MRN: 0000 ███████

📅 11/4/2024  📍 FMC FMED EMG 888-750-0036

## Instructions

 **Your medications have changed today**

See your updated medication list for details.

 **Read the attached information**
1. LOW BACK PAIN: GENERAL INFO (ENGLISH)
2. ELBOW SPRAIN (ENGLISH)

 **Pick up these medications at KP FO FONTANA 24 HR**

Acetaminophen

Address: 9961 Sierra Ave, Hosp Bldg, Fl 1, Fontana CA 92335
Phone:   855-434-2155

 **Follow up with GUSTAV SALOMON REX SMITH MD, M.D. in 1 week (around 11/11/2024)**
Specialty: Family Practice
Contact: 789 E COOLEY DR
         Colton CA 92324-4007
         833-574-2273

## What's Next

You currently have no upcoming appointments scheduled.

## 🏠 Your Treatment Team

| Provider | Role |
|---|---|
| Reidinger, Michael James (P.A.), P.A. | Physician Assistant |

## You are allergic to the following

| Allergen | Reactions |
|---|---|
| **Shellfish Derived Products** | Other<br>RIS COMMENT |

Throat swelling , Nov 30 2018 2:19PM Other Throat swelling

## Today's Visit

**Diagnoses**
- ELBOW SPRAIN
- LOW BACK PAIN

 **Imaging Tests**
X-RAY ELBOW
X-RAY LUMBOSACRAL SPINE

 **Medications Given**
Acetaminophen (TYLENOL) Last given at 1:17 PM

| | |
|---|---|
| 🩺 Blood Pressure **133/88** | 🧍 BMI **27.80** |
| ⚖️ Weight **188 lb 4.4 oz** | 🌡️ Temperature **98.2 °F** |
| ❤️ Pulse **95** | 🫁 Respiration **18** |
| 🫁 Oxygen Saturation **97%** | |

## kp.org

View your After Visit Summary and more online at **https:// healthy.kaiserpermanente.org/openie/.**

This is confidential information. Do not throw away in a Kaiser Permanente trash can.

**EXHIBIT G**
**MEDICAL BILLING – EMERGENCY ROOM RECEIPT**

This exhibit contains a true and correct copy of the financial records for emergency treatment.

It confirms:

- **Exhibit G**: Direct financial losses for diagnostic X-rays and emergency medical intervention.

Offered as supporting documentation for Paragraphs 31, 44, and 102 of the Complaint.

VERIFIED COMPLAINT

Kaiser Permanente-Fontana Medical Center
9961 Sierra Ave Fontana, CA 92335
800-464-4000


Ticket Number:                  121592139
Guarantor ID:           XXXXXXXXX9389

Tran Serial:                    476465938
11/04/24 01:26:27 PM
Card Type:                           VISA
Card Account:           XXXXXXXXXXX6222
Name:                   QUINTANILLA/NELSON
Entry:                               Chip
Transaction Type:                    SALE
Auth Code:                         52894D
APP:                        VISA CREDIT
AID:                     A0000000031010
TVR:                        8080008000
IAD:                    06011203A0A000
TSI:                               6800
ARC:                                 00
MODE:                            ISSUER
Amount:                         $125.00

Copay                           $125.00

Total:                          $125.00


Thank you for your payment. If it does
not cover everything you owe for your
visit, you will get a bill for the
difference later, based on your plan
details. If you have questions or wish
to dispute your charges, please call the
Member Services number on your Kaiser
Permanente ID card.  To protect your
confidential information, please do not
put this receipt in the trash at this
facility.

## EXHIBIT H
## ARREST AND DISPOSITION INFORMATION

This exhibit contains a true and correct copy of the court-ordered dismissal from December 8, 2025.

It confirms:

- **Exhibit H**: The dismissal of all charges in the "interest of justice" pursuant to Penal Code § 1385.

Offered as supporting documentation for Paragraphs 32 and 61 of the Complaint.

VERIFIED COMPLAINT

# ARREST INFORMATION

Show All entries

Filter:

| Count | Statute | Report Num | Agency | ▾ Arrest Date | Booking Num |
|-------|---------|------------|--------|---------------|-------------|
| 001 | PC148(A)(1) | 2411300097 | San Bernardino County SO | 11/3/2024 | 2411300097 |

Showing 1 to 1 of 1 entries

Previous | 1 | Next

# CHARGES, DISPOSITIONS & PLEAS

| COUNT | RESULT | DATE | DETAILS |
|-------|--------|------|---------|
| 001 | 📁 CHARGE | 11/3/2024 | Misdemeanor - PC148(A)(1)-M: Obstructs/Resists/Public Off |
| | PLEA | 12/19/2024 | Not Guilty |
| | DISPOSITION | 12/8/2025 | Dismissal/Stricken - PC1385 Interest of Justice |

## EXHIBIT I
## FORMAL ADMINISTRATIVE CLAIM AGAINST THE COUNTY

This exhibit contains a true and correct copy of the claim filed under the Government Claims Act on April 28, 2025.

It confirms:

- **Exhibit I**: Plaintiff's timely exhaustion of administrative remedies, detailing physical injuries and the conversion of currency.

Offered as supporting documentation for Paragraphs 20, 33, 118, 121, 122, and 125 of the Complaint.

VERIFIED COMPLAINT

# CLAIM AGAINST COUNTY OF SAN BERNARDINO
## (CLAIM FORM MUST BE FILLED OUT PROPERLY OR CLAIM WILL BE RETURNED WITHOUT FILING)

**DATE:** April 28, 2025

Claim is hereby made against the treasury of the County of San Bernardino, State of California, as follows:

- Less than $10,000 – State the total amount claimed $ _____
- More than $10,000 – Check one of the boxes:
  - ☐ Municipal Court Jurisdiction ($10,000 - $25,000)
  - ☑ Superior Court Jurisdiction ($25,001 and up)

Claimant makes the following statements in support of the claim:

1. Name of Claimant: Nelson     Quintinalla
   *First*    *Middle*    *Last*    *(Area Code and Phone No.)*

2. Address of Claimant: 25278 Taylor Street, Apt. D    Loma Linda, CA    92354
   *Street*    *City*    *Zip Code*

   Gender: ✔ Male __ Female   Date of Birth: 8/6/1986   SS#: 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
   ***(The information Requested is Mandatory if Presenting a Claim for Bodily Injury)***

3. Notices concerning claim should be sent to:
   Robinson Zermay LLP    777 S. Alameda, 2nd Fl   90021    213.257.9299
   *Name*    *Address*    *Zip Code*    *(Area Code and Phone No.)*

4. Circumstances giving rise to claim are as follows: On November 4, 2024, at or near Yaamava' Resort & Casino located at 777 San Manuel Blvd S, Highland, CA 92346, deputies of the San Bernardino County Sheriff's Department used excessive and unreasonable force during claimant's detention and arrest without probable cause. Deputies grabbed claimant without warning, forcibly threw him to the ground, sat on his head, and placed a knee on his neck, causing trauma and injury.

5. Date, Time and Place (city, street, cross-street) damage occurred and nature thereof: November 4, 2024, appr. 3:00 PM Yaamava' Resort & Casino, 777 San Manuel Blvd S, Highland, CA 92346. Nature: Use of excessive force during arrest by San Bernardino County Sheriff's deputies.

6. Public property and/or public officers or employees causing injury, damage or loss:
   Unknown deputies of the San Bernardino County Sheriff's Department. Names and badge numbers presently unknown. Incident involved multiple deputies engaging in excessive and criminal force.

7. Name, address and telephone number of witnesses: Unknown at this time. Request for disclosure of involved deputies and any known witnesses is hereby made.

8. Basis of computation of claimed amount is as follows:

   Medical expenses to date   To be determined     Loss wages   To be determined.
   Estimated future medical expenses   TBD.     General damages   500,000
   Other expenses   To be determined.     Property damage   Unknown
   Other damages   To be determined.

   _____
   *Claimant or Representative (Signature)*

**RETURN COMPLETED FORM TO:**
Risk Management Division – County of San Bernardino, State of California
222 W. Hospitality Lane, 3rd Floor
San Bernardino, CA 92415-0016

Office: (909) 386-8631
Fax: (909) 382-3212

Revised 9-2011